IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SHANE C. BENSON, )
)
    Plaintiff, )
)
) CIV-12-813-HE
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
  Security Administration[1], )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

1

I. Background

Plaintiff protectively filed his application on September 2, 2010. (TR 99-102, 141). In his application, Plaintiff alleged that he became unable to engage in substantial gainful activity beginning December 31, 2009, due to depression, borderline intellectual functioning, and high blood pressure. (TR 145). Plaintiff stated that he was "[l]aid off" from his last job on July 1, 2007. (TR 145). Plaintiff described a high school education completed in 1989 and previous work as a temporary construction worker, hot dog hanger in a meat packing factory, and home health aide. (TR 146, 147, 151).

In a hearing conducted November 15, 2011, Plaintiff testified that he had previously received social security benefits due to learning disabilities until the age of 18. (TR 24-26). He unsuccessfully applied for disability benefits in April 1989, when he turned 18, and again in 2004. (TR 26, 28). Plaintiff testified he was 40 years old, had a fourth grade educational level and was placed in special education classes beginning in childhood, that he could not spell except for his name or read except for a printed grocery list, that he could do simple math, and that he last worked in a meat packing factory in 2007 when he was laid off. He described difficulty with memory, depression stemming from childhood physical abuse by a parent, nightmares, suicidal thoughts, and anxiety around other people. At the time of the hearing, he had been living for two weeks with a disabled friend although he had previously been homeless since age 27.

The medical record reflects that Plaintiff was admitted to the crisis stabilization unit at Red Rock Behavioral Health Services, Inc. ("Red Rock") on April 16, 2010, after he

sought treatment for depression beginning two weeks earlier. (TR 186). Plaintiff stated he had lost his job that day and had been kicked out of the home where he was living. He also stated that he was not allowed to stay at the local shelter because he had been "kick[ed] out in past." (TR 186). He described suicidal thoughts for three days and feeling hopeless. The interviewer noted his mental status included depression, adequate memory, normal speech, cooperative but histrionic attitude, poor insight, good impulse control, and no prior mental health treatment or medications. (TR 186-188).

Plaintiff was discharged five days later on anti-depressant and sleeping aid medications. (TR 189). At that time, he was described as "motivated, good listener, cooperative, recognizes the need for continuing counseling and medications," and he was referred to Hope Community Services ("Hope") in Oklahoma City for further treatment. (TR 189). Ms. Yearwood, a licensed private counselor, diagnosed Plaintiff with depressive disorder not otherwise specified. (TR 191).

Hope's records reflect that Plaintiff was interviewed on April 21, 2010, and that he stated he had been unemployed for two years, had been homeless for four years, that he had serious anxiety, depression, and suicidal thoughts, and that he needed assistance with medications and housing. (TR 203-211). A clinical social worker at Hope noted that Plaintiff exhibited dysphoric mood, restricted affect, concrete thought processes, poor judgment, limited insight, and recent passive suicidal ideation, and the clinician's diagnostic impression was major depressive disorder, recurrent, severe without psychotic features, and borderline intellectual functioning. (TR 202).

Plaintiff reported he had been recently banned from a local homeless shelter for three years although he gave no reason. (TR 201). He also indicated he had been physically abused by his father and had been in special education his entire school life, that he had recently learned he was adopted, and that he had depressive symptoms for the previous three years since his mother died. (TR 201). Dr. Al-Khouri, a psychiatrist at Hope, diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychosis. (TR 200).

Dr. Zong, a psychiatrist at Hope, noted on April 28, 2010, that Plaintiff denied suicidal thoughts and reported the previously-prescribed medications "helped a lot" with his mood and that he was sleeping eight hours per night. Dr. Al-Khouri noted in August 2010 that Plaintiff's sleeping aid medication was changed and that his anti-depressant medication was continued. (TR 195).

The record contains a treatment plan for Plaintiff from Hope dated October 17, 2011. (TR 277-279). The clinician noted a GAF score of 50 and a highest GAF score in the previous year of 50 for Plaintiff.[2] At that time, Plaintiff was living in a homeless shelter and he reported he had three close friends he had met at the shelter. (TR 279).

Ms. Nick, who lists her credentials as "B.A., BHRI, CM," completed a "Medical

---

[2]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the Amer. Psych. Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 25-32).

4

Source Opinion of Ability to Do Work-Related Activities" on May 31, 2011. On this form, Ms. Nick check-marked boxes indicating that Plaintiff was moderately or markedly impaired in most mental work-related activities. (TR 273-274). As a foundation for her opinion, Ms. Nick states only: "[d]ue to inability to read or write at a greater danger to self [and] others." (TR 274). The form does not indicate that Ms. Nick has any particular relationship, treating or otherwise, with Plaintiff.

Administrative Law Judge Thompson ("ALJ") issued a decision dated December 5, 2011, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 9-16). Following the agency's well-established sequential analysis, the ALJ found at step one that Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on March 31, 2010, and that Plaintiff did not engage in substantial gainful activity from his alleged onset date of December 31, 2009, through his last insured date of March 31, 2010. (TR 11).

At step two, the ALJ found that Plaintiff had medically-determinable impairments of depression, hypertension, and obesity, but that none of these impairment, considered singly or in combination, significantly limited his ability to perform basic work-related activities for 12 consecutive months. (TR 11-12). Therefore, the ALJ concluded that Plaintiff did not have a "severe" impairment or combination of impairments.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on March 31, 2010. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must demonstrate he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2010. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Step Two

At step two, the ALJ must determine "whether the claimant has a medically severe

impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation" at 20 C.F.R. § 404.1520©. Pursuant to this regulation, the claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). See 20 C.F.R. § 404.1521(a)("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."); SSR 85-28, 1985 WL 56856, * 3 (an impairment that imposes "no more than a minimal effect on an individual's ability to work" is "not severe"). Although the claimant must make only a "de minimis" showing that the medical condition is medically severe, "the claimant must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

Plaintiff presents three main arguments in his opening brief. First, Plaintiff argues that the ALJ erred by failing to order a consultative psychological evaluation of Plaintiff to determine whether or not he was cognitively impaired (see Plaintiff's Opening Brief, at 7)("This ALJ should have ordered a CE with a WRAT, a WAIS, an MMPI and requested a mental health evaluation with an MRFC."). Plaintiff points to a letter dated January 6, 2011, from his former attorney requesting that the agency conduct a consultative evaluation of Plaintiff. (TR 270). In the letter, the attorney asserts that an evaluation of Plaintiff's intellectual functioning would assist the agency because Plaintiff was "essentially unable to read and write, and has significant difficulties understanding and comprehending." (TR 270).

Plaintiff also points to his own testimony that he could read only simple words on a grocery list and write his name. The ALJ's duty to develop the record is dependent on "[s]several preconditions." Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009). "Under normal circumstances, the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development." Id. (internal quotations and citation omitted).

It is the claimant's "burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Id. There is only one notation in the record by a social worker[3] who conducted an initial interview of Plaintiff at Hope in April 2010 that Plaintiff "appears to have a learning [disorder] or impairments in cognitive functioning [and] stated he is unable to read or write. Stated this has always impaired his ability to maintain jobs [and] function in society." (TR 224)(repeated TR 277). This notation made in a report of an initial interview with Plaintiff is not sufficient to suggest a reasonable possibility of a severe cognitive impairment.

In his decision, the ALJ recognized Plaintiff's former lawyer's request and provided reasons for declining to order a consultative psychological evaluation of Plaintiff. Despite Plaintiff's argument that those reasons were "false," the ALJ's decision reflects that the ALJ considered all of the evidence in the record, including Plaintiff's work history, and made a

---

[3]Plaintiff's statement that this notation was made by treating "doctors" is incorrect. Plaintiff's Opening Brief, at 2. Plaintiff's statement that he had a "fourth grade reading level" is also unsupported by any evidence in the record. Plaintiff's Opening Brief, at 4.

reasoned judgment that psychological testing was not necessary for an adequate record. See Harrold v. Astrue, 299 Fed. Appx. 783, 788 (10th Cir. 2008)(unpublished op.)(recognizing claimant's prior work history is highly probative of his cognitive abilities). The ALJ reasoned, *inter alia*, that educational records, including psychological, medical, and cognitive test results, were requested from Plaintiff's high school, but the school responded that no such records existed. (TR 262-263). Although Plaintiff argues that some of his previous jobs were performed in "sheltered" environments, Plaintiff does not present a cogent argument that either these jobs or his more recent jobs in private industry create a credible possibility of a cognitive impairment significantly affecting Plaintiff's ability to work. The ALJ did not err by failing to order a consultative psychological evaluation of Plaintiff.

In a second argument, Plaintiff asserts that the ALJ did not adequately develop the record because he did not obtain a purported social security record showing Plaintiff received disability benefits as a child. Plaintiff misinterprets the burden of proof in a social security disability proceeding when he posits that the ALJ "needed to get the missing information" from this purported social security record. At the hearing, Plaintiff testified that he received disability benefits as a child. The ALJ stated that he had searched the agency records and that there was no record of Plaintiff "ever being on disability" although agency records showed Plaintiff had previously applied for benefits on two occasions. (TR 27).

The claimant bears the burden of establishing a prima facie case of disability at the first four steps of the agency's five-step sequential evaluation process. Williams v. Bowen,

9

844 F.2d 748, 751 n. 2 (10th Cir. 1988). Plaintiff and his attorney were alerted at the hearing that the agency did not have a record consistent with Plaintiff's testimony that he had received disability benefits as a child. Plaintiff does not indicate that he took any steps to secure the purported social security record, and the ALJ did not err by failing to search the record a second time.

Plaintiff's third argument is that there is not substantial evidence to support the ALJ's step two determination. Plaintiff first refers to a notation in a Hope interviewer's report of an initial interview with Plaintiff that Plaintiff stated he had some difficulty with mobility because of an unidentified "injury" he received when he was 18 years old and "was ran [sic] over by drunk driver." (TR 232). There is no medical evidence in the record of treatment of Plaintiff for any physical injury or pain-causing impairment, and the ALJ did not err in finding that Plaintiff had no severe physical impairment on or before the date he was last insured for Title II benefits.[4]

Plaintiff's similar arguments regarding asserted errors in a purported "credibility" analysis are frivolous. "The step two severity determination is based on medical factors alone." Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). In reaching the step two determination, and this is the only decision at issue in this appeal, the ALJ was not required to analyze the credibility of Plaintiff's subjective statements concerning his alleged

---

[4]Plaintiff's attorney is cautioned that similar frivolous arguments like those set forth in his opening brief, i.e., Plaintiff "has back, shoulder and leg impairments," and "the ALJ determined that Mr. Benson's musculoskeletal impairments were severe," may in the future subject him to sanctions. Plaintiff's Opening Brief, at 14, 19.

impairments. Plaintiff did not allege he was disabled by pain or even that his ability to work was restricted by pain. Plaintiff testified that on a normal day he cooked his meals, watched television and stayed to himself. (TR 36). There is no record of medical treatment of Plaintiff for any physical impairment. The ALJ did not err by failing to undertake an analysis of Plaintiff's credibility. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)("Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment. . . that could reasonably be expected to produce the alleged disabling pain.").

The agency's medical and psychological consultants, whose opinions are considered expert opinion evidence, SSR 96-6p, 1996 WL 374180, *1 (1996), opined that the record contained insufficient evidence of a severe physical or mental impairment. (TR 248-261, 264, 271, 272). The ALJ accorded these opinions "significant weight because they are consistent with the record as a whole." (TR 15). As there were no conflicting treating physician opinions in the record, the ALJ was not required to considered whether other opinions in the record should be accorded more weight. No error occurred with respect to the ALJ's evaluation of this evidence.

The ALJ considered and gave "very little weight" to the opinion by Ms. Nick. (TR 15). The ALJ provided reasons for this decision that are well supported by the record, and no error occurred with respect to the ALJ's evaluation of this evidence.

Further, the ALJ considered Plaintiff's medically-determinable impairments, including his obesity, and found those impairments did not significantly affect his ability to perform

work-related activities. Plaintiff does not point to any evidence in the record suggesting that Plaintiff's obesity, either alone or in combination with his other medically-determinable impairments of depression and high blood pressure, affected his ability to work. There is simply no record that Plaintiff sought medical treatment for or was treated for any physical impairment. Because there is substantial evidence in the record to support the ALJ's decision and no error occurred in the ALJ's evaluation of the evidence, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ June 17th _____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ___28th___ day of ___May___, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE